UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v.            ) | No. 23-cr-71 (RDM) |
| ) | |
| **Bryan Shawn Smith,** ) | |
| ) | |
| **Defendant**   ) | |
| _____) | |

**MOTION TO DISMISS CIVIL DISORDER CHARGE
UNDER 18 U.S.C. § 231(a)(3) (COUNT ONE)**

Bryan S. Smith, through undersigned counsel, and pursuant to Rule of Criminal Procedure 12(b)(3), hereby respectfully requests that the Court dismiss Count One of the Indictment, which charges him with civil disorder, in violation of 18 U.S.C. § 231(a)(3). As argued below, § 231(a)(3) is unconstitutionally vague and overbroad, and impermissibly criminalizes conduct protected under the First Amendment.

**FACTUAL BACKGROUND**

The indictment alleges five counts against Mr. Smith relating to the events at the U.S. Capitol on January 6, 2021. Tracking the language of 18 U.S.C. § 231(a)(3), Count One alleges that Mr. Smith:

> committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

Section § 231(a)(3) provides that:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects

1

> commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function shall be fined under this title or imprisoned not more than five years or both.

18 U.S.C. § 231(a)(3). For purposes of this statute, "civil disorder" is defined as:

> any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual.

18 U.S.C. § 232(1). "Commerce" is defined as:

> (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia.

18 U.S.C. § 232(2). "Federally protected function" is defined as:

> any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails.

18 U.S.C. § 232(3).

## ARGUMENT

**I.      The Civil Disorder Count under 231(a)(3) is Unconstitutionally Vague and Overbroad**

Section 231(a)(3) is overbroad and unconstitutionally vague because its imprecise and subjective standards fail to provide fair notice and create significant risk of arbitrary enforcement. Indeed, several terms are so broad and indefinite as to impose unqualified burdens on a range of protected expression and speech.

Generally, a criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement. *Sessions v.*

2

*Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

"The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Johnson v. United States*, 576 U.S. 591, 595 (2015) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)); *see Kolender v. Lawson*, 461 U.S. 352, 358-59 n. 8 (1983); *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498-99 (1982); *see also Smith v. Goguen*, 415 U.S. 566, 573 (1974) (Where "a statute's literal scope [reaches] expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts.").

Section 231(a)(3) contains vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. The following examples of vagueness are the following.

By penalizing the phrase "any act to obstruct, impede, or interfere," §231(a)(3) reaches the outer limits of verbal and expressive conduct without drawing any distinction that could exclude acts undertaken merely to convey a message or symbolic content. *See Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (acknowledging that "[s]tanding alone . . . a prohibition on 'any act [undertaken] in such a manner as to disturb or alarm the public' fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement.") (quoting *Louisiana v. Cox*, 379 U.S. 536, 551-52 (1965)). The phrase "any act to obstruct, impede, or interfere" can fairly include within its plain meaning such diverse acts as pure speech, expressive conduct, minimal jostling or even grievous, violent assaults.

The phrasing "incident to and during the commission of a civil disorder" is also problematic for its vagueness. The term "civil disorder," as defined under §232(1), is extremely far-reaching, applying to "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of . . . injury to the property." 18 U.S.C. § 232(1). This definition of "civil disorder" offers no restriction to solve the vagueness problem

3

because it could apply to virtually any turbulent public gathering to which police might be called, not just large protests or riots. And there is no indication within the statute whether the defendant is required to have participated in the civil disorder, or if it is sufficient that he or she be in the general vicinity of the event.

The Supreme Court has held "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests.*, 455 U.S. at 499. Here, there is no such mitigation, because Section 231(a)(3) contains no scienter requirement, thus creating 'a trap for those who act in good faith.'" *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)). Because the statute omits an express *mens rea* requirement, it is left to police, prosecutors, and judges to decide whether the statute requires knowledge or specific intent or neither. The absence *mens rea* element weighs in further favor of the statute's unconstitutionality.

In enacting a statute with such imprecise language, Congress created "a criminal prohibition of alarming breadth." *United States v. Stevens*, 559 U.S. 460, 474 (2010). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). Section 231(a)(3)'s scope "may entirely depend" on a law enforcement official's unbounded speculation about subjective factors, *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971), thus subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction." *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988) (holding statute unconstitutionally vague where liability "depend[ed] entirely upon the victim's state of mind").

In *Houston v. Hill*, 482 U.S. 451 (1987), the Supreme Court declared unconstitutional a municipal ordinance that made it unlawful to interrupt a police officer in the performance of his or

her duties, finding that the ordinance's sweeping nature was neither "inevitable" nor "essential to maintain public order." 482 U.S. at 464. Because the ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words," it wrongly gave police "unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Id*. at 465.

§231(a)(3) casts far too wide a net. By expansively encompassing "any act" that could interfere with the duties of a police officer or firefighter during a civil disorder, §231(a)(3) is not limited to "violent acts" or acts that result in bodily injury or that otherwise put persons or property in imminent danger. *C.f. United States v. Reese*, 92 U.S. (2 Otto) 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."). Further, the statute does not exclude those acts with protected expressive content or those that occur in a traditional public forum. Instead, as discussed further below, §231(a)(3) reaches a substantial amount of expressive conduct, and without clear boundaries, the law chills free speech and invites discriminatory application by law enforcement and the government.

II.     **Section 231(a)(3) Impermissibly Criminalizes Conduct Protected Under the First Amendment.**

"In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). The First Amendment protects expressive conduct like cross-burning, flag-burning and assembly in inconvenient places. Conduct is considered expressive, and therefore protected, under the First Amendment when it "is intended to convey a 'particularized message' and the likelihood is great that the message would be so understood." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (quoting *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999)).

5

Put simply, § 231(a)(3) is at odds with the protections of the First Amendment. The broadness of § 231(a)(3)'s scope authorizes a felony conviction for a bystander who yells at police to desist from an arrest, one who flips off officers to distract or encourage resistance, or one who records police activity with a cell phone. *See Hill*, 482 U.S. at 459 ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them."); *Glick v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) ("[T]he First Amendment protects the filming of government officials in public places."). The First Amendment does not permit an unqualified prohibition on "interference" with police duties because "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462-462; *see also McCoy v. City of Columbia*, 929 F. Supp. 2d 541, 550 (D.S.C. 2013) (invalidating a state statute for overbreadth that made it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties."). Such an all-embracing criminal statutes like §231(a)(3) "must be scrutinized with particular care." *Hill*, 482 U.S. at 459; *see also Winters v. New York*, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."). Criminal laws that "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id*. Section 231(a)(3) extends to a substantial amount of constitutionally protected speech and expressive conduct, beyond the law's legitimate scope.

**III.    Section 231(a)(3) Cannot be Saved by Construction without Violating the Constitutional Separation of Powers**

Judicial interpretation cannot save § 231(a)(3) from its constitutional invalidity. A statute's vagueness does not permit judges to "rewrite a law to confirm it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481.

Rather, "[w]hen Congress passes a vague law, the role of the courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Davis*, 139 S. Ct. at 2323.

### IV. In the Alternative, the Indictment Should be Dismissed Because it Neither Provides Adequate Notice nor Assures that the Grand Jury Made the Determinations Required by the Fifth Amendment

The constitutional rights to presentment to a grand jury and adequate notice of the charges are embedded in the Fifth and Sixth Amendments to the United States Constitution and in Rule 7(c) of the Federal Rules of Criminal Procedure. In the array of January 6th cases, the government mass produced indictments identical in language with little exception. The charge against Mr. Smith in Count One lacks any specifics regarding the alleged acts or circumstances and contains only conclusory allegations.

"[R]eal notice of the true nature of the charge" is "the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). In holding that the notice requirements of the Sixth Amendment apply to the States through the requirement of due process, the Supreme Court stated: "No principle of procedural due process is more clearly established than that notice of the specific charge [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *see* Joseph Story, Commentaries on the Constitution, § 1799 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

It is not enough for an indictment simply to parrot the statute and its generic terms. The indictment must set forth, on its face, the "essential facts" of the offense and "descend to particulars," beyond statutory boilerplate.  Fed. R. Crim. P. 7(c)(1); *Russell v. United States*, 369 U.S. 749, 765 (1962); *United States v. Ballestas*, 795 F.3d 138, 148–49 (D.C. Cir. 2015).  In other words, "the indictment may use the language of the statute, but that language must be

supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980). As such, the sufficiency of the allegations in an indictment dovetail with a criminal defendant's rights under the Fifth and Sixth Amendments and the court's ability to answer questions of law concerning the charges.

The Fifth Amendment's presentment provision also requires that the facts be explained sufficiently in the indictment so that the grand jury's finding of probable cause can be ascertained and to foreclose conviction based on any offense not found by the grand jury. *See Stirone*, 361 U.S. at 215. Without this, the court would be forced to "guess what was in the minds of the grand jury at the time they returned the indictment," which would "deprive the defendant of a basic protection that the grand jury was designed to secure," by allowing a defendant to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (citing *Russell v. United States*, 369 U.S. 749, 770 (1962)).

Unfortunately, the indictments in the January 6 cases generally, and Mr. Smith's case, fail to fulfill either the notice or presentment requirements of the Fifth and Sixth Amendments. There is no attempt within the indictment to fulfill Rule 7(c)'s requirement of a "plain, concise, and definite written statement of the *essential facts* constituting the offense charged." (emphasis added). The indictment does not specify Mr. Smith's actual conduct or the specific circumstances involved. Accordingly, the indictment in this case does not demonstrate that the grand jury made the required finding of probable cause, and it provides the defense insufficient notice of the conduct charged.

The indictment is defective. It does not specify what "act" Mr. Smith is alleged to have committed or attempted to commit "to obstruct, impede, or interfere with a law enforcement officer." It does not allege "any way" in which Mr. Smith "obstruct[ed], delay[ed], or adversely affect[ed] commerce or the movement of any article or commodity in

8

commerce." It does not state what "commerce," or article or commodity in commerce, was "affected."

Finally, to the extent that the indictment charges Mr. Smith with an act "which in any way and degree obstructed, delayed, and adversely affected . . . the conduct and performance of any federally protected function," the indictment further fails to state an offense. "Federally protected function" is statutorily defined as "any function, operation, or action carried out, under the laws of the United States, *by any department, agency, or instrumentality of the United States*." 18 U.S.C. § 232(3) (emphasis added). The indictment states no department, agency, or instrumentality of the United States. Congress is not a department, agency, or instrumentality of the United States, but rather the *legislative branch* of the United States. *See* 18 U.S.C. § 6 (defining "department" and "agency"); *Hubbard v. United States*, 514 U.S. 695, 700 (1995); *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) ("an entity within the Legislative Branch cannot be a 'department' within the meaning of . . . 18 U.S.C. § 6").

## CONCLUSION

For all of these reasons, Mr. Smith respectfully requests that the Court dismiss Count One (§ 231 charge).

Respectfully submitted,

/s/Aubrey Webb            .
55 Merrick Way, Suite 212
Coral Gables, FL 33134
786-302-0928

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed to the Office of the Clerk, United States District Court, District of Columbia, 333 Constitution Ave., N.W. Washington D.C. 20001, Room 1225 and to the Office of the United States Attorney, to all counsel of record for the United States, 555 4th St N.W., Washington D.C. 20530, on September 22, 2023.

/s/Aubrey Webb

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) **No. 23-cr-71 (RDM)** |
| | ) |
| **Bryan Shawn Smith,** | ) |
| | ) |
| **Defendant** | ) |
| | ) |

**ORDER**

Upon consideration of the defendant's Motion to Dismiss, and for good cause shown, it is hereby ORDERED that the motion is GRANTED.

DATE: _____

_____
UNITED STATES DISTRICT JUDGE