UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    *Plaintiff*

v.                                                  Case No. 1:23-cr-00071-RDM

BRYAN SHAWN SMITH

    *Defendant.*

## MOTION TO DISMISS SUPERSEDING INDICTMENT ON GROUNDS OF UNCONSTITUTIONAL VINDICTIVENESS AND RETALIATION

COMES NOW, the Defendant Bryan Shawn Smith ("Smith"), by and through counsel, with this Motion to Dismiss the Superseding indictment in this case, on grounds of unconstitutional vindictiveness and retaliation.

Counsel for the United States admitted in court during a status pretrial hearing on April 2, 2024, that the United States possessed all information upon which the superseding indictment rests *for over a year prior* to the filing of the superseding indictment. The Assistant U.S. Attorney made this admission while arguing that Smith should be made to face trial just three weeks after the filing of the superseding indictment. The prosecutor indicated that Smith had all the information needed to defend himself for over a year because the prosecution had <u>all the information needed to bring</u> the new (18 USC Sec. 111(b)) charge.

I. **FAILED PLEA NEGOTIATIONS IN APRIL 2024**

Because (1) the government had all information necessary to bring its new superseding indictment for over a year; and (2), the new superseding indictment brings a higher charge which exposes Smith to more severe potential penalties, the Court should ask: what changed so much that the government brought these major new charges?

The answer is that (a) plea negotiations had failed; and (b) Smith had fired counsel and communicated his intent to exercise his constitutional rights by going to trial. Around late March and early April 2024, Smith (and Smith's then-defense counsel) engaged in plea negotiations, including a "revers proffer" zoom meeting in which the government laid out its case to the defendant. At that meeting Mr. Smith was read his Miranda rights.

Follow-up communications, however, resulted in Smith clearly communicating his intent to reject the government's likely plea offers and to go to trial.

II. **Legal Standard.**

"When, as in this case, the government chooses not to lodge charges for a period of time and then makes the decision to prosecute so close after a defendant elects to exercise his rights in the face of prosecution opposition, apparent vindictiveness is clearly established. Indeed, the question of the delay and the

timing of the present indictment is crucial." *United States v. Velsicol Chem. Corp.*, 498 F.Supp. 1255, 1264-65 (D.D.C. 1980).

In *United States v. Groves,* 571 F.2d 450 (9th Cir. 1978) (cited with favor in *Velsicol Chem. Corp.*), the Ninth Circuit found that the *timing* of a subsequent indictment is a fundamental factor in rendering a superceding indictment suspect. The court upheld dismissal of the indictment where the government knew the extent of Groves' involvement in a case and secured a different indictment only after defendant exercised his right to a speedy trial. See also *United States v. Alvarado-Sandoval,* 557 F.2d 645 (9th Cir. 1977) ("appearance of vindictiveness, not vindictiveness itself, is the touchstone . . ."); *United States v. DeMarco,* 550 F.2d 1224, 1227 (9th Cir. 1977) ("apprehension of vindictiveness and the 'appearance of vindictiveness' are adequate to bring this case squarely within *Blackledge* [ *v. Perry*].") [vindictiveness] (citation omitted).

Last-Minute Gamesmanship by Prosecutors Violates Due Process and the Right to a Fair Trial.

**III. AN UNCONSTITUTIONAL PATTERN OF VENGEANCE AND RETALIATION BY THE GOVERNMENT IN PROSECUTION OF JANUARY 6TH CASES IN THE DISTRICT OF THE DISTRICT OF COLUMBIA**

Additionally, Smith's counsel has identified an unconstitutional, <u>systematic pattern and practice</u> by the government in this federal court district.  Counsel has

identified dozens of January 6 defendants who found themselves facing severe, substantially-heightened criminal charges when they refused to plead guilty. For example,

1. Hatchet Speed;
2. Deborah Lee Case No. 21-cr-00303-ABJ;
3. Derick Gunby;
4. Stephanie Baez;
5. Damon Michael Beckley;[1]
6. Therese Borgerding;[2]
7. Mark Sahady;
8. Joseph Irwin;[3]
9. Leo Kelly;[4]
10. Patrick Montgomery[5]
11. Richard Barnett,[6]
12. Darrell Neely,[7]

---

[1] Case 1:21-cr-00285-JEB (originally charged with two misdemeanors; superseded with § 1512 charge and additional misdemeanors after rejecting plea offer; then superseded with additional, §231 charge).
[2] 21-cr-0631-2 (TJK) (accused J6 misdemeanant charged with felony § 231 charge upon refusing to plead guilty).
[3] 21-cr-589 (initially charged with 2 misdemeanors, then 4 misdemeanors, then—after two years and upon rejecting plea offer—obstruction of an official proceeding, § 1512) (superseded 15 days before trial).
[4] 21cr 708 (initially charged with 2 misdemeanors, then charged with § 1512 after declining misdemeanor plea offer).
[5] Patrick Montgomery's case is slightly different from the others in this list. Montgomery's docket journey began with two misdemeanors for going inside the Capitol on Jan. 6, but now (in its 5th charging instrument) is a
major prosecution of ten charges, including one charge (18 USC § 1512) carrying a potential 20 years in prison.
[6] 21-cr-38 (initially charged with 3 misdemeanors; then superceded with § 1512 obstruction and weapon possession (taser) counts); then superseded with § 231 civil disorder count after rejecting plea offer.
[7] Case No. 21-cr-642-JDB (initially charged with 5 misdemeanors, then superceded with felony § 231 count after declining plea offer) (ultimately acquitted at trial of the felony § 231 count.).

13. Anthime Joseph Gionet[8]
14. David Davis,[9]
15. John George Todd III;[10]
16. Larry Ligas[11]
17. Dominic Box[12]

Each of these J6 defendants initially faced two to four "standard" misdemeanors and were offered a plea deal in which all counts but one would be dropped in exchange for the defendant pleading guilty to one petty (Class B—up to 6 months) misdemeanor. In each case, after the defendant expressed his innocence and intent to exercise his or her right to trial, federal prosecutors added (or threatened to add) an additional, 20-year felony charge (obstruction of an official proceeding under 18 U.S.C. § 1512).

---

[8] (a.k.a. "Baked Alaska,"—who said on the record he was innocent but was coerced to take the misdemeanor plea deal when prosecutors threatened to charge him with a felony if he insisted on a trial).

[9] Case #23-CR-281; superseded with Section 1512(c)(2) charge on Filed 10/11/23

[10] Case No. 22-cr-166 (charged with 20-year-felony assault causing bodily injury (cut on an officer's finger) ten days before trial after refusing plea to Class B misdemeanor; later charged with 20-year-felony 1512 obstruction charge after asserting privilege to testify before grand jury).

[11] Chicago activist Lawrence Ligas faces new felony charge in Jan. 6 US Capitol attack
ByChuck Goudie and Barb Markoff, Christine Tressel and Tom Jones WLS logo
Friday, January 19, 2024 https://abc7chicago.com/us-capitol-attack-arrest-chicago-larry-ligas/14341832/
Ligas stated that the Justice Department "...added another Jan. 6 charge a felony after I refused to take a plea agreement and sit down with the FBI."

[12] Chris Joyner, "Savannah-area man's Jan. 6 charges upgraded to felonies," Atlanta Journal Constitution, March 1, 2024. https://www.ajc.com/politics/savannah-area-mans-jan-6-charges-upgraded-to-felonies/MF7ZLJ4KV5DCFIZW5PLHYWILTQ/ (accessed 3/3/2024) ("The new indictment charges Box with three felonies — obstruction of an official proceeding and two counts of civil disorder. If convicted, Box faces the prospect of years in prison, rather than the days or weeks in jail typically handed down in misdemeanor cases in the long-running Capitol riot investigation. The indictment does not specifically spell out what prosecutors claim Box did while inside the Capitol. The two counts of civil disorder indicate Box obstructed or interfered with a police officer, but court records do not include details of the allegations.").

It should be noted that Deborah Lee and Mark Sahady both traveled to and entered the Capitol accompanied by close companions who were charged similarly but opted to accept initial plea offers. And in each case, these friends received sentences of probation only. But Deborah Lee and Mark Sahady now face potentially decades in prison for insisting on trials.

(Note that Counsel is aware of <u>dozens of other</u> J6 cases which also exhibited the stacking of additional charges upon J6 defendants who refused to plead guilty. See, for example:

- Virtually all the "Oath Keeper" cases ("seditious conspiracy" and other counts added, after around a year of cases pending),[13]
- Virtually all of the "Proud Boy" cases (same),
- Christopher Alberts (new felony assault charge added after declining 3-year plea offer (ultimately sentenced to 7 years)),
- Kenneth Joseph Thomas (additional assault charges added after rejecting plea offer) (ultimately sentenced to almost five years; despite being acquitted of several counts by the jury),
- Garet Miller, 21-cr119 (multiple felony counts added upon refusal to plead guilty),
- Ryan Samsel (additional charges, including assault with dangerous weapon count added over several indictments),
- Rachael Powell (additional felony count added after turning down plea offer),
- Richard Slaughter (additional 20-year count of aggravated assault against federal officers with a deadly weapon (handing a tiny capsule of pepper

---

[13] See, e.g., DOJ Press Release, August 9, 2021: "Fifth Superseding Indictment Unsealed in Oath Keeper Conspiracy Case Related to Jan. 6 Capitol Breach: Two Additional Conspirators Identified, Charges Added in Eighteen-Defendant Conspiracy Case." https://www.justice.gov/usao-dc/pr/fifth-superseding-indictment-unsealed-oath-keeper-conspiracy-case-related-jan-6-capitol

spray—available over the counter at 7-11—to another demonstrator, who sprayed the mild repellent in the direction of officers), after refusing offer).

And, in fact, there is evidence that this pattern and practice by the government in this District is, in fact, chilling the exercise of trial rights. Moreover, there is evidence that this pattern and practice is likely contributing to wrongful convictions of Jan. 6 defendants for *crimes they did not commit*.

**"I believe I'm innocent ... but they're saying if I go to trial they're going to hit me with a felony."**

That this retaliatory tactic by the government in J6 cases has chilled the exercise of constitutional rights is a matter of public record. In at least one reported case, a J6 defendant named Anthime Joseph Gionet ("Baked Alaska") stated during his change-of-plea hearing that he was pleading guilty to <u>a crime he did not commit</u> due to prosecutors' threats to charge him with a felony if he exercised his constitutional right to jury trial. See Ryan J. Reilly "Judge nixes Jan. 6 plea deal after right-wing streamer 'Baked Alaska' declares himself 'innocent,'" *NBC News*, May 11, 2022, https://www.nbcnews.com/politics/justice-department/judge-nixes-jan-6-plea-right-wing-streamer-baked-alaska-declares-innoc-rcna28245 (accessed 9/28/2023) ("Anthime Joseph Gionet, otherwise known as 'Baked Alaska,' said he had agreed to take the deal only because he was worried he'd be charged with a

felony"). Gionet's "plea deal went up in smoke after he declared himself innocent." *Id*.

Gionet was offered a dismissal of all counts but one if Gionet would plead guilty to a single misdemeanor. Most significantly, Gionet stated at his change-of-plea colloquy "I believe I'm innocent ... but they're saying if I go to trial they're going to hit me with a felony." *Id*. (Note that Gionet's plea deal was ultimately accepted by Judge Sullivan.)

### IV. A systematic practice of punishing those who insist on their innocence is the most egregious due process violation of all.

Significantly, the landmark *Pearce* case—the case that launched the issue of vindictiveness as a due process violation—mentioned that a *practice* of lengthier sentences upon exercise of rights would be the most egregious violation of all.

Even the case of *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the case most cited by the government to support a notion that anything goes during plea negotiations, pronounced that prosecutors abuse their power where the accused is not realistically "free to accept or reject the prosecution's offer." 434 U. S. 363. Counsel submits that no J6er is realistically "free to accept or reject the prosecution's offer" where rejection means almost certain destruction of his life and years of incarceration.

Moreover, the government's systematic practice of punishing the exercise of rights in this District leaves little room for defense lawyers to recommend going to trial, where such advice is almost certainly ineffective assistance of counsel.

Given the extreme disparities between outcomes of J6 defendants who immediately accept the government's misdemeanor plea offers and defendants who opt for a trial, it is virtually <u>ineffective assistance of counsel</u> to advise J6 misdemeanor clients to do anything other than immediately plead guilty.  the Supreme Court's rulings in *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012) suggests that defense lawyers are almost certainly straying toward ineffective assistance if they counsel against immediate pleas of guilty.[14] *Lafler v. Cooper*, 566 U.S. 156 (2012) ruled that ineffective assistance of counsel during plea negotiations can constitute grounds for relief if there is a fair probability that defense counsel's ineffective assistance resulted in a harsher sentence or conviction.

### V.   CONCLUSION

---

[14] *Missouri v. Frye* :: 566 U.S. 134 (2012) suggested a defense lawyer committed ineffective assistance where prosecutors would have let Frye plead guilty to a misdemeanor and serve 90 days in prison for driving without a license but, after the offer expired, Frye was sentenced to three years.  In the *Cooper* case, a defense lawyer was found to have provided ineffective assistance where Cooper rejected a plea bargain that called for a sentence of four to seven years, and consequently was sentenced to 15 to 30 years.

The superseding indictment recently filed in this case was filed by the government vindictively, in retaliation against Mr. Smith for exercising his constitutional rights, and to chill the exercise of rights by other J6 defendants. This is part of a recognized pattern, policy, and practice by the government in the District Court, and this pattern and practice is contributing to the wrongful conviction of J6 defendants for crimes they did not commit.

ACCORDINGLY, the superseding indictment in this case must be dismissed.

Date: April 5, 2024

Respectfully Submitted,

/s/ John M. Pierce
John M. Pierce
John Pierce Law, P.C.
2550 Oxnard Street
3rd Floor, PMB #172
Woodlands, Hills, CA 91367
jpierce@johnpiercelaw.com
(662) 665-1061

Attorney for Defendant
/s/ Roger I. Roots
Roger I. Roots
John Pierce Law, P.C.
2550 Oxnard Street
3rd Floor, PMB #172
Woodlands, Hills, CA 91367
rroots@johnpiercelaw.com
(662) 665-1061
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, April 5, 2024, I caused a copy of the

foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce