### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 1:23-CR00071-RDM |
| v. : | |
| : | |
| BRYAN SHAWN SMITH, : | |
| : | |
| Defendant. : | |

### UNITED STATES MOTION FOR A HEARING TO REVOKE RELEASE ORDER

The United States of America, by and through its undersigned attorney, respectfully moves the Court pursuant to 18 U.S.C. § 3148(b) to hold a hearing for defendant Bryan Smith for violations of the terms of his post-trial release, to revoke his post-trial release order, and detain him pending the case proceedings in this matter.

On May 10, 2024, the Court convicted Smith of assaulting an officer, civil disorder, and related offenses arising from his actions at the U.S. Capitol on January 6, 2021. Following the convictions, the Court placed Smith on home incarceration pending sentencing.

On Saturday May 11, 2024, while travelling back to his home in Madison, Alabama, Smith contacted his probation officer, Ethan King. Smith notified King of the Court's added condition of home incarceration pending his sentencing hearing on August 20th, 2024. Smith also advised that the Court ordered Smith to report to the probation office by Monday, May 13, 2024.

On Monday, May 13, 2024, Smith reported to King. When Smith reported, King reviewed the additional release conditions, including home incarceration, with Smith. King advised Smith the condition of home incarceration required Smith to wear an ankle monitor. Smith advised King that he could not have an ankle monitor because of his cellulitis medical condition. As proof of his cellulitis condition, Smith provided King the same conclusory five sentence, undated letter that he

previously provided to the Court in support of his motion to continue trial (ECF 67), which the Court denied. (Minute Entry, April 26, 2024)

King asked Smith why he did not bring this issue to the Court's attention at the time the Court imposed the condition of home incarceration. Smith advised that "he was out of the room, and it was one of his attorneys and the AUSA who spoke to the judge." Therefore, according to Smith, he did not have the opportunity to bring this issue to the Court nor did he think to do so at the time. This was false. In fact, Smith was present in the courtroom when the Court imposed the restriction of home incarceration, signed the forms presented to him by the courtroom deputy, and asked the courtroom deputy several questions relating to the additional restrictions.

King acknowledged Smith's medical condition but advised Smith that King needed to contact the Washington, D.C. Probation Office to receive additional information on Smith's condition, including a path forward given the restriction of home incarceration. In the interim, King advised Smith that he was to abide by the home incarceration restrictions and not leave his residence. Additionally, King advised Smith that the probation office could not grant any exceptions to his release conditions because of the home incarceration restriction. If Smith requested an exception to his release conditions, he was required to file a motion with the Court for appropriate relief.

On May 23, 2024, an employee at Lindsey Lane Christian Academy in Athens, Alabama – where Smith's children attend school – contacted Special Agent Stephen Lee. The employee advised SA Lee that earlier in the week on or about Tuesday, May 21st, 2024, she observed Smith on school grounds as confirmed by security footage. Given the local new coverage concerning Smith's conviction and release conditions, she was surprised and concerned to see Smith at this location.

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Upon the government's motion to revoke a release order, such as the instant motion, "[a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release." 18 U.S.C. § 3148(b). Once before the Court,

> [t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –
>
> (1) finds that there is – (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that – (A) based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release."

*Id.*

Smith knew of the additional restriction of home incarceration the Court imposed upon him following his conviction. Despite Smith's false representations to probation, Smith was in the courtroom and signed documentation where he acknowledged that he was placed on home incarceration pending sentencing. Once Smith travelled home, he contacted the probation office in the Northern District of Alabama as directed by the Court to advise of the additional restriction. Smith's probation officer advised Smith on Monday May 13, 2024, that, because the Court placed Smith on home incarceration, as opposed to home detention, the probation officer has no authority to grant Smith any exceptions to leave his home. If Smith need to leave his home, Smith had to file a motion with the Court under all circumstances except those involving a medical emergency.

Yet, even with these unequivocal instructions, Smith never attempted to file a request with the Court nor did Smith follow clear instructions from probation that he was to remain in his home

with or without an ankle monitor. Smith intentionally violated those instructions when he went to his children's school.

Additionally, Smith provided the same limited evidence to probation that he provided to the Court concerning Smith's alleged cellulitis condition and its impact on his ability to wear an ankle monitor. Smith told probation that he was not present when the Court ordered home incarceration and he had no ability to bring this issue to the Court. This is untrue. The Court ordered the ankle monitor as part of Smith's home incarceration to ensure Smith abided by the terms of his post-trial release and to address concerns that Smith may attempt to flee.

Essentially, Smith's probation officer put him on the honor system until the probation office was able to glean additional context surrounding his medical condition as it applied to his release conditions. Yet, with less that two weeks since Smith's conviction at trial, he has already violated his release conditions.

If Smith cannot wear the monitor or refuses to wear the monitor, the Government is concerned that probation will be unable to ensure Smith abides by the terms of home incarceration or otherwise does not attempt to flee. Additionally, Smith is unlikely to abide by his release conditions as contemplated under 18 U.S.C. § 3148(b)(2)(B), as indicated by his recent presence outside of his home without lawful authority. Therefore, the government respectfully requests the Court revoke Smith's conditions of release.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   /s/ *Eli J. Ross*

Eli J. Ross
Assistant United States Attorney
IL Bar No. 6321411
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 297-1515
Email: Eli.Ross@usdoj.gov

/s/ *Sara Levine*
Sara E. Levine
Assistant United States Attorney
VA Bar No. 98972
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-1793
Email: Sara.Levine@usdoj.gov