UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **CASE NO. 1:23-CR00071-RDM** |
| v. : | |
| : | |
| **BRYAN SHAWN SMITH,** : | |
| : | |
| **Defendant.** : | |

**UNITED STATES RESPONSE TO DEFENDANT'S MOTION FOR
RECONSIDERATION OF ORDER OF DETENTION PENDING SENTENCING**

The United States of America, by and through its undersigned attorney, respectfully requests this Court deny Smith's motion for reconsideration of his detention pending sentencing. Despite Smith's continued efforts to proffer unsupported assertions surrounding his release violation, the facts remain unchanged: The Court placed Smith on home incarceration pending sentencing. The Court, the courtroom deputy, and Smith's probation officer all explained home incarceration in detail to Smith. Smith knew the requirements under home incarceration, yet he intentionally violated them anyway. Therefore, Smith is unlikely to abide by any condition, or combination of conditions, of release.

The consistent theme between the May 31, 2024, revocation hearing and Smith's present motion for reconsideration is his eagerness to levy a litany of disjointed and enigmatic excuses for his conduct. This Court observed his demeanor and evasiveness when he attempted to explain away his release violations at the revocation hearing. At the revocation hearing, the Court questioned Smith's recitation of events and alleged timeline for his violation, while addressing Smith's lack of credulity. Similarly, the Court should give little weight to similar repeated representations in his motion. Nonetheless, the government will address Smith's renewed attempt to secure release from confinement and offer clarifying facts for this Court's consideration.

Following Smith's conviction on May 10, 2024, for assaulting an officer, civil disorder, and related offenses arising from his actions at the U.S. Capitol on January 6, 2021, the Court placed Smith on home incarceration pending sentencing. Smith knew of his release conditions the moment he left the Courtroom. This Court should look no further than Smith's motion for reconsideration. The Court admonished Smith that the Court was going to, "order that he be placed on home incarceration with a monitoring device." ECF 101 at 2; Trial Tr., 5/10/24 at 110. Despite Smith's claim that he was unaware home incarceration required an ankle monitor, moments later in his presence, his defense attorney had the following colloquy with the Court:

> "We would beg the Court for an opportunity for him to work and continue working, *given he will be on an ankle monitor*, my understanding he will be on *an ankle monitory system*, we would request that he be able to leave his house, to go to work, and this kind of thing." Trial Tr. 5/10/24 at 111.

Additionally, as represented in Smith's motion, the Court – in no uncertain terms – advised Smith that he had to request permission from the Court to leave his home. Tr. 5/10/2024 at p. 111-112. The Court was willing to consider such a request at the appropriate time if Smith requested an exception in the appropriate manner, i.e. asking the Court for permission first. Trial Tr. 5/10/24 at 111.[1]

Yet, as discussed *infra*, Smith continues to blame a brief recess at the revocation hearing for his confusion.[2] Smith referenced this recess during his revocation hearing, and doing so a second time in his motion does not increase its persuasiveness. If Smith needed any clarification

---

[1] At the revocation hearing, the Court again admonished Smith that if he had requested an exception for home incarceration with the Court, the Court would have likely granted Smith's request.

[2] Smith advised his probation officer that he was not present when the Court ordered home incarceration and he had no ability to bring this issue to the Court. This is untrue. The Court ordered the ankle monitor as part of Smith's home incarceration to ensure Smith abided by the terms of his post-trial release and to address concerns that Smith may attempt to flee.

from the Court regarding his release conditions following the Court's unambiguous guidance, the courtroom deputy offered it again immediately after this recess. The courtroom deputy advised Smith that if he needed modifications, his attorney must request those modifications from the Court. ECF 101 at 3. Smith acknowledged and signed the requisite release documents. Any notion that Smith "didn't realize that this was how they monitored his location" (ECF 101 at 3) is false.

For further proof that Smith knew of his requirements, on Saturday May 11, 2024, while traveling back to his home in Madison, Alabama, Smith contacted his probation officer, Ethan King as ordered by the Court. Smith notified King of the Court's added condition of home incarceration pending sentencing. Smith also advised King that the Court ordered Smith to report to the probation office by Monday, May 13, 2024.

On Monday, May 13, 2024, Smith reported to King. When Smith reported, King reviewed the additional release conditions, including home incarceration, with Smith. King advised Smith on Monday May 13, 2024, that, because the Court placed Smith on home incarceration, as opposed to home detention, the probation officer had no authority to grant Smith any exceptions to leave his home. If Smith needed to leave his home, Smith had to file a motion with the Court under all circumstances except those involving a medical emergency.

King also advised Smith the condition of home incarceration required Smith to wear an ankle monitor. Smith advised King that he could not have an ankle monitor because of his medical condition. Smith provided King the same conclusory five sentence, undated letter that he previously provided to the Court in support of his motion to continue trial (ECF 67), which the Court denied. Minute Entry, April 26, 2024. King asked Smith why he did not bring this issue to the Court's attention at the time the Court imposed the condition of home incarceration. Smith stated that, "he was out of the room, and it was one of his attorneys and the AUSA who spoke to the judge."

According to Smith, he did not have the opportunity to bring this issue to the Court nor did he think to do so at the time. These claims were false. As discussed *supra*, Smith was present in the courtroom when the Court imposed the restriction of home incarceration, signed the forms presented to him by the courtroom deputy, and asked the courtroom deputy several questions relating to the additional restrictions.

King acknowledged Smith's medical condition but advised Smith that King needed to contact the Washington, D.C., Probation Office to receive additional information on Smith's condition, including a path forward given the restriction of home incarceration. Essentially, Smith's probation officer put Smith on the honor system until he could glean additional context. In the interim, King advised Smith that he must abide by the home incarceration restrictions and not leave his residence. At this point, numerous parties, including the Court, courtroom deputy, Smith's prior attorneys, and his probation officer had apprised him of the requirements of his post-trial release.

Smith next asserts that following this guidance from Mr. King, he unsuccessfully sought to work with his prior defense attorney to seek clarification or modification of his release conditions. Though Smith now claims he was seeking to modify this condition, he never said as much to King. Nonetheless, Smith's discussion of his troubles with his previous defense attorney – and what they did or did not do – reinforces the government's argument. If Smith's purported representations are true, then it bolsters the contention that Smith knew the parameters of his home incarceration and wanted to modify them. He should have followed those conditions while he sought guidance from counsel, but he did not.  Instead, Smith continues to blame others as he peddles similar excuses to those offered at the revocation hearing. The Court found those excuses unpersuasive then and should find them unpersuasive now.

All of this led to the incident on Tuesday, May 21st, 2024, where Smith violated his release conditions when he traveled to his children's school in Athens, Alabama. Smith recycles the excuse that he was forced to do so because of a medical appointment. The Court heard this excuse at the revocation hearing and found it unpersuasive. Smith offered contradicting and unconvincing support for his timeline of events and the specific route he traveled to the school. In the hearing, Smith claimed he was bringing a prescription to his wife that he had obtained from the doctor he was unable to see that day, so she could fill the prescription because he knew he was not allowed to go to the pharmacy himself. Inexplicably, Smith found the detour to his children's school to provide the prescription to his wife was more appropriate under home incarceration than obtaining medicine from a pharmacy himself. While this convoluted explanation was prominently featured at the hearing, it is notably absent from his current motion. Smith could not explain why he was on video at the school over two hours after his doctor's appointment. Without rehashing additional specifics from his testimony, Smith's reasoning did not make sense.

As a corollary matter, but equally concerning, is Smith's baseless assertion that the wife of the special agent assigned to this case reported Smith's release violation to authorities. In so doing, Smith also implicated the agent's children. In fact, a school administrator – unrelated to the special agent – reported Smith to authorities for his violation. Smith's conviction was no secret in northern Alabama, and it is entirely reasonable for a school administrator to express concerns when a recently convicted felon arrived on school grounds. Regardless, these facts are wholly irrelevant for Smith's motion. He was caught on surveillance footage violating his release. The Court should see this for what it is: another attempt by Smith to shirk responsibility for his actions, distract from his own conduct, and impugn nefarious motives to an unrelated party.

Nor should the court give credence to Smith's apparent effort to strike a conciliatory tone

and offer the Court feelings of "regret" in his motion at the time it is most convenient – only after seeking guidance from a new defense attorney. ECF 101 at 5. Smith's continued disdain for the rule of law and the Court's authority is on full display at the nightly self-described "January 6, vigil" outside the District of Columbia Central Detention Facility. Below are excerpts of some of his recent statements:

> On June 19, 2024, Smith stated that the "Government is asking for 9 years on me, hope its less than that given that I didn't do anything." Smith referred to himself as a "political prisoner" and stated that it was, "his honor to have served in that gap for the people that weren't there," a reference to his pride for the actions he committed on January 6, 2021.
>
> On June 22, 2024, Smith stated that, "Judges have been giving lower sentences for 111(b) charges, since they know they'll be held accountable someday for their actions." Smith discussed knowing that the truth about the "persecution will come out." Smith referred to the Department of Justice as the "Department of Injustice" and says that, "everyone [referring to other January 6, 2021, detainees] see this is a far bigger battle and we're all on this hill to die on."
>
> On June 26, 2024, Smith compared himself to protestors protesting unrelated social justice issues. Smith complained that other protesters received "a lighter sentence." Smith, despite a sentencing date scheduled for October 7, 2024, complained that he received 9 years of incarceration. Smith stated that "this doesn't end without the hand of god." Smith compared himself to Julian Assange's release and stated, "we're next."

A sampling of Smith's statements shows a disdain for these proceedings and willingness to question this Court's authority. If this Court grants Smith's release request, it is entirely probable, even likely, that he would disregard this Court's order a second time. Despite Smith's best attempt in his motion to characterize himself as an upstanding defendant in this case, the record demonstrates otherwise. Smith can offer an alternative narrative for his initial arrest, but this Court heard testimony regarding Smith's evasiveness. Smith regularly failed to communicate with the government and the Court, and took steps, some seemingly strategic, to delay his case prior to trial. These tactics offer insight into an individual with a cavalier view of the justice system and

inclination to make light of this Court's orders. The Court should weigh these factors appropriately.

In summary, at the revocation hearing, under U.S.C. § 3148(b) the Court found:

1. That there is clear and convincing evidence that Smith violated a condition of release; and,

2. That Smith is unlikely to abide by any condition or combination of conditions of release.

Given this finding, the Court entered an order of revocation and detention. Nothing Smith presented changes this analysis. Smith is unlikely to abide by his release conditions as contemplated under 18 U.S.C. § 3148(b)(2)(B), as indicated by his post-trial release, and his combative and incredulous approach at the revocation hearing and during the pendency of these proceedings. Therefore, the government respectfully requests the Court deny Smith's motion for reconsideration of the order of detention pending sentencing.

                          Respectfully submitted,
                          MATTHEW M. GRAVES
                          United States Attorney
                          DC Bar No. 481052

By:   /s/ *Eli J. Ross*
        Eli J. Ross
        Assistant United States
        Attorney IL Bar No. 6321411
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        Phone: (202) 297-1515
        Email: Eli.Ross@usdoj.gov

        /s/ *Sara Levine*
        Sara E. Levine
        Assistant United States
        Attorney VA Bar No. 98972
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530

Phone: (202) 252-1793
Email: Sara.Levine@usdoj.gov